**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

| | |
|---|---|
| ADAM WOOD, *on behalf of himself and all others similarly situated*, | Case No. <u>4:25-cv-166-DJH</u> |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| ROBINSON ECONOMIC SERVICES, LLC D/B/A CLEAR AIR LENDING; ROBINSON ECONOMIC DEVELOPMENT CORPORATION; CT2022 FIN 1 LLC; BORROWWORKS FINANCIAL, INC.; BORROWWORKS DECISION SCIENCE, INC.; | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Adam Wood ("Plaintiff") brings this class action lawsuit on behalf of himself and all others similarly situated, by and through undersigned counsel, and hereby alleges the following against Defendants Robinson Economic Services, LLC d/b/a Clear Air Lending ("Clear Air" or "Defendant"), Robinson Economic Development Corporation ("REDC" or "Defendant"), CT2022 FIN 1 LLC ("CT2022" or "Defendant"), BorrowWorks Financial, Inc. ("BorrowWorks" or "Defendant"), and BorrowWorks Decision Science, Inc. ("BWDS" or "Defendant")(collectively, "Defendants"). Facts pertaining to Plaintiff and his experiences and circumstances are alleged based upon personal knowledge, and all other facts alleged herein are based upon investigation of counsel and—where indicated—upon information and good faith belief.

## NATURE OF THE ACTION

1.      On its website, Clear Air touts to its customers that it is a "trusted lender" who is here to "relieve your worries quickly, securely, and with integrity."[1]

2.      Instead, Defendants take advantage of people at their most vulnerable, in desperate moments of financial hardship, and thumb their noses at the statutory laws of the Commonwealth of Kentucky by employing a scheme to charge customers illegal usurious interest rates of 500 to 600%.

3.      To do this, Defendants represent that Clear Air is a tribal lending entity that is wholly owned by Robinson Economic Development Corporation ("REDC"), a tribal corporation wholly owned by the Robinson Rancheria of Pomo Indians of California (the "Tribe"), a federally recognized Indian Tribe. In reality, Defendants operate a "rent-a-tribe" scheme in order to circumvent state usury laws, including the laws of the Commonwealth of Kentucky.

4.      A "rent-a-tribe" scheme is colloquial phrase used to describe the business practices of non-tribal payday lenders, including Defendants, hiding behind the guise of a Native American tribe in order to avoid usury laws by invoking sovereign immunity.

5.      Plaintiff Adam Wood brings this action to secure redress from predatory and unlawful loans issued and enforced by Defendants.

6.      Plaintiff seeks a declaratory judgment that the loans are void under KRS 360.010 (Count I), and damages pursuant to KRS 360.020 (Count II) and KRS 367.110 (Count III).

---

[1] https://clearairlending.com/

**JURISDICTION AND VENUE**

7.      The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) as well as 1332(d) because this case is brought as a class action where the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, is a citizen of a state different from Defendants.

8.      This Court has personal jurisdiction over Defendants because Defendants have intentionally directed their business activities in Kentucky, targeting the Kentucky market, and purposefully availed themselves of the privilege of conducting business in this state, including by targeting Kentucky as a state in which to offer loans. In addition, the conduct underlying the claims that caused Plaintiff's injuries took place in Kentucky, that is, Defendants entering into and collecting payment on its usurious loans occurred in this state, which was foreseeable to Defendants.

9.      Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because a substantial part of the events giving rise to this action occurred in this District, including entering into and collecting payment on the loans took place in this District.

**PARTIES**

10.     Plaintiff Adam Wood is a natural person who at all times relevant to this matter resided in Owensboro, Daviess County, Kentucky.

11.     Plaintiff Adam Wood moved to Minot, North Dakota in or around November 18, 2024.

12.     Defendant Robinson Economic Development Corporation ("REDC") is a corporation organized under the law of the Robinson Rancheria of Pomo Indian Tribe.

13.    Defendant CT2022 is a limited liability company organized under the laws of Oklahoma with its principal office located at 5608 S. 14th Street, Fort Smith, AR 72901.

14.    Upon information and belief, CT2022 provides the funds used to make loans through REDC's business entities, including Clear Air.

15.    To secure repayment, CT2022 has filed UCC-1 financing statements (Exhibits 1-2) against Clear Air, a subdivision of REDC, disclosing a security interest in "any and all net receipts, receivables, net revenues, and rents received by the Debtor from the operation of any business or enterprise or otherwise," "all present and future deposit accounts of the Debtor, including but not limited to the Collateral Deposit Account and the Collection Account, the funds on deposit and all proceeds therefrom, and any and all certificates of deposit," "all property and assets, real or personal, tangible or intangible, now existing or hereafter acquired, of Debtor," and "Eligible Assets."

16.    "Eligible Assets" are defined as "all consumer loans made pursuant to Consumer Contracts if such Consumer Contracts: (a) comply with the Eligibility Criteria established by Debtor and Lender; and (b) are pledged to lender and in respect of which Lender has a perfected first priority lien not subject to any other liens or claims of any kind."

17.    "Consumer Contract" is defined to mean "(a) a cash advance contract and the Truth in Lending Act disclosure executed by a Consumer Obligor in favor of Debtor relating to an unsecured consumer loan made in conformity with all applicable Consumer Financial Services Laws and Tribal Laws with a Consumer Obligor; (b) all rights, title, and interest, including all rights of repayment, under the Consumer Contract Documents and all instruments and documents arising therefrom or relating thereto; and (c) all proceeds arising therefrom or relating thereto

(including, but not limited to, any personal property (if any) acquired in connection with the exercise of any remedy relating to a Consumer Contract."

18.    "Consumer Contract Documents" are defined as "all instruments, promissory notes, documents, and agreements entered into, by a Consumer Obligor with Debtor, and evidencing or executed in connection with the application for or disclosure with respect to a Consumer Contract, including, but not limited to, a Consumer Contract."

19.    Therefore, CT2022 has a security interest in all loans made by Clear Air.

20.    Defendant BorrowWorks Financial ("BorrowWorks") is a Texas corporation with a principal business address of 6445 Harris Parkway, Ft. Worth, TX 76132. Its registered agent is Andrew Selking at that address.

21.    Defendant BorrowWorks Decision Science ("BWDS") is a Delaware corporation with a principal business address of 6445 Harris Parkway, Ft. Worth, TX 76132. Its registered agent is Corporation Trust Company,1209 Orange St., Wilmington, DE 19801.

22.    BWDS develops and utilizes software to predict the repayment abilities of consumers who apply for online loans with exceedingly high interest rates, as well as the propensities of the consumer to actually pay the loans.

23.    Software developed by BWDS was utilized in the underwriting of Plaintiff's loans.

24.    BWDS software is written specifically with lenders like Clear Air in mind, e.g., lenders which charge 500% or more interest rates.

25.    At all times, BWDS is aware its software is used in the furtherance of loans with interest rates exceeding 500% annually.

26.     BorrowWorks, BWDS, CT2022, their contractors and hired agents are in actual control of nearly all aspects of Clear Air and REDC, including underwriting, lending decisions, collection strategies, credit reporting, and the sale of charged-off debts to debt collectors.

27.     Defendant Clear Air claims to be an entity of the Tribe.  On its website, Defendant Clear Air lists its physical address as P.O. Box 1429, Nice, CA 95464.

28.     REDC formed and conducted a series of lending operations that were either subsidiaries or assumed names, and which change from time to time.

29.     Defendant Clear Air is one such subsidiary or assumed name, which operates an online lending website, https://clearairlending.com/ (the "Website"), and makes loans at interest rates of up to 699% to consumers in many states, including Kentucky.

## FACTS

30.     Between December 4, 2023 and October 31, 2024, Plaintiff obtained the following loans from Defendants:

    a.   December 4, 2023 Loan for $1,000.00 at 699.88% APR (Ex. 3)

    b.   January 26, 2024 Loan for $1,000.00 at 624.99% APR (Ex. 4)

    c.   February 26, 2024 Loan for $1,250.00 at 524.99% APR (Ex. 5)

    d.   March 19, 2024 Loan for $1,250.00 at 524.99% APR (Ex. 6)

    e.   April 4, 2024 Loan for $1,250.00 at 524.99% APR (Ex. 7)

    f.   April 15, 2024 Loan for $1,250.00 at 524.99% APR (Ex. 8)

    g.   May 29, 2024 Loan for $1,250.00 at 524.99% APR (Ex. 9)

    h.   July 26, 2024 Loan for $1,250.00 at 525.00% APR (Ex. 10)

    i.   August 12, 2024 Loan for $1,250.00 at 525.00% APR (Ex. 11)

    j.   August 22, 2024 Loan for $1,250.00 at 524.99% APR (Ex. 12)

    k.   September 12, 2024 Loan for $1,250.00 at 524.99% APR (Ex. 13)

    l.   October 31, 2024 Loan for $1,500 at 524.99% APR (Ex. 14)

31.    The Robinson Rancheria of Pomo Indians are primarily located on a federal reservation in Lake County, in Northern California.

32.    The Tribe has approximately 211 enrolled members.

33.    Clear Air and REDC claim to be arms of the Tribe; however, upon information and belief, most if not all aspects of the lending operation are carried out on non-Tribal land, including lead generation, marketing, funding, underwriting, payment processing, and collection.

34.    Upon information and belief, the Tribe lends its name to the CT2022, BorrowWorks, and BWDS, but receives little to no benefit from the lending operation.

35.    Upon information and belief, the profits from the lending activities are received by non-members of the Tribe, specifically CT2022, BorrowWorks, and BWDS.

36.    Upon information and belief, an applicant for a loan from Clear Air and REDC who does not meet the qualifications established by CT2022, BorrowWorks, BWDS, or their related companies will not be offered a loan.

37.    Upon information and belief, Clear Air and REDC are not permitted to make loans denied by CT2022, BorrowWorks, or BWDS.

38.    Upon information and belief, the Tribe retains roughly two cents on the dollar of revenue generated by Clear Air Lending and REDC, after paying various management fees, consulting fees, technology fees, interest on the line of credit, and other sums to CT2022, BorrowWorks, and BWDS.

39.    Upon information and belief, the various fees and interest have to be repaid to CT2022, BorrowWorks, and BWDS prior to any payments to the Tribe, meaning that the non-tribal economic interests come before those of the Tribe's.

40.    Upon information and belief, in the event a particular loan is charged-off as uncollectable prior to at least the original principal loan amount being paid, CT2022, BorrowWorks, and BWDS absorb the loss, not the tribe.

41.    Defendants regularly make loans to individuals in Kentucky at usurious rates of nearly 700% and use the same standard form loan agreement.

42.    The loans were obtained for personal, family, or household purposes and not for business purposes.

43.    At no time have Defendants had a license from the Kentucky Department of Financial Institutions.

44.    Defendants nevertheless advertise and make loans to Kentucky residents at rates greatly exceeding 8%.

45.    Plaintiff signed the loan agreements electronically, while in Kentucky.

46.    The funds were transferred electronically to Plaintiff's bank accounts in Kentucky.

47.    Repayment was to be made by ACH debit from Plaintiff's bank account in Kentucky.

48.    Plaintiff was a resident of Kentucky at all relevant times.

49.    At no time did Plaintiff visit any business premises of any Defendants in connection with the loans.

50.    Clear Air's website states that it does allow access or accept applications from residents of all states.

51.     Defendants intentionally violated Kentucky's rate limitations because they concluded Kentucky authorities were unlikely to take action to enforce their usury laws against them.

## KENTUCKY'S PROHIBITIONS ON PREDATORY LOANS
### Kentucky Revised Statutes Chapter 360

52.     Effective July 14, 2018, KRS 360.010 governs the legal interest rate that may not be exceeded with respect to residents of the state. KRS 360.010 forbids, with limited exceptions that do not apply here, parties from agreeing to a per annum interest rate higher than 8%.

53.     Under KRS 360.020, the knowing "taking, receiving, reserving, or charging of an interest rate greater than is allowed by KRS 360.010 … shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it." Where greater interest has been paid, the statute provides for "twice the amount of interest thus paid from the creditors taking or receiving the same: provided, that such action commenced within two (2) years from the time that the usurious transaction occurred." KRS 360.020(1).

54.     Any loans to Kentucky residents at more than 8% that are made by lenders violate KRS 360.010 and are subject to damages under KRS 360.020.

## INVALIDITY OF CLAIM OF TRIBAL IMMUNITY

55.     In an attempt to evade prosecution under usury laws of states like Kentucky, online lenders frequently create an elaborate charade claiming their otherwise illegal businesses are entitled to the sovereign immunity of Native American tribes.

56.     However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

57.    To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough*, 629 F.3d at 1183, 1187-88.

58.    These so-called "tribal lenders" do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, are conducted by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

59.    Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes, and, therefore, are not shielded by sovereign immunity.

60.    Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff*, 787 F.App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme, stating that sovereign immunity does not transform illegal loans into legal ones and that "reasonable people would know that collecting unlawful debt is unlawful").

61.    Attempting to circumvent state interest caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. *See United States v. Tucker, et*

*al.*, No. 1:16-cr-00091-PKC, 2024 U.S. Dist. LEXIS 155383 (S.D.N.Y Aug. 28, 2024); aff'd by

*United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

62.    Upon information and belief, BorrowWorks, BDWS, CT2022, and their contracts

and hired agents are actually in control of nearly all aspects of Clear Air and REDC, including

underwriting, lending decisions, collection strategies, credit reporting, and the sale of charged-off

debt to debt collectors.

63.    Upon information and belief, BorrowWorks, BDWS, and CT2022 approve

applicants for their loans, in all meaningful ways.

64.    The Tribe receives only a small fee while revenues primarily flow to non-tribal

persons and entities.

65.    Thus, the Tribe exerts no control over the business, how it is operated, who it lends

to, and so forth.

**CLASS ALLEGATIONS**

66.    Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and

(b)(2), on behalf of himself and the following class of similarly-situated persons:

All persons residing in Kentucky who, within the relevant statutory period, entered into a

loan agreement with Defendant Clear Air, REDC, or one of REDC's subsidiaries/assumed names,

and paid money pursuant to the agreement.

67.    Plaintiff may alter the class definition to conform to developments in the case and

discovery.

68.    The class is so numerous that joinder of all members is not practicable. On

information and belief, based on the making of loans over the Internet using form documents, there

are at least 100 class members.

69.     There are many questions of law and fact common to the claims of Plaintiff and the proposed members of the Class, and those questions predominate over any questions that may only affect individual members. Common questions for the Class include but are not limited to the following:

a. Whether the loans at issue are usurious under Kentucky law;

b. Whether the loans at issue are void as contrary to public policy;

c. Whether Defendants made deceptive, misleading, or false representations in connection with the loans;

d. Whether Plaintiff and the Class may recover money paid to Defendants pursuant to any of the loans;

e. Whether Defendants' conduct was willfully or knowingly unlawful.

70.     Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources necessary to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

71.     Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

**COUNT I**
**VIOLATION of KRS 360.010**
**Declaratory Judgment**
***(On behalf of Plaintiff and Kentucky Class Members)***

72.     Plaintiff repeats and re-alleges each allegation contained in the Complaint as if fully set forth herein.

73.     An actual and existing controversy of a justiciable nature exists between the parties with respect to the issues set out herein within the scope and meaning of 28 U.S.C. § 2201.

74.     Defendants contracted for and collected loans at more than 8% interest from Plaintiff and the class members, in violation of KRS 360.010.

75.     In accordance with 28 U.S.C. §§ 2201 and 2202, Plaintiff is entitled to a declaration that these agreements are void and unenforceable against the Plaintiff and the class members.

**COUNT II**
**VIOLATION of KRS 360.020**
***(On behalf of Plaintiff and Kentucky Class Members)***

76.     Plaintiff repeats and re-alleges each allegation contained in the Complaint as if fully set forth herein.

77.     Defendants have devised and engaged in a scheme to fund, issue, and collect usurious loans through a rent-a-tribe scheme.

78.     Plaintiff has taken usurious loans from Defendants and was forced to personally guarantee these debts.

79.     Defendants are not exempt from state usury laws, nor are the transactions that are the subject of this action exempt from state usury laws.

80.     The interest charged by Defendants in connection with these transactions was in excess of the maximum interest rate permitted by KRS 360.010.

81.     Plaintiff and Class members have in fact paid Defendants interest in excess of the maximum interest rate permitted by KRS 360.010.

82.     Defendants knowingly and willfully entered into the loans with usurious intent.

83.     As a result of the foregoing illegal acts and practices, the Defendants have surrendered their right to collect any interest on any of these amounts.

**COUNT III**
**VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT**
**KRS 367.110, et seq.**
***(On Behalf of Plaintiff & Kentucky Class Members)***

84.     Plaintiff and the Class repeat and re-allege all other paragraphs of the Complaint as if fully set forth herein.

85.     Defendants are a "person" for purposes of the Kentucky Consumer Protection Act ("KCPA"), KRS 367.110, et seq.

86.     Defendants' conduct as alleged herein occurred in the conduct of trade.

87.     The KCPA prohibits "unfair, false, misleading, or deceptive acts or practices in the conduct of any trade." Any person who "purchases or leases goods or services primarily for personal, financial, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by Ky. Rev. Stat. § 367.170, may bring an action under the Rules of Civil Procedure . . . ." KRS 367.220.

88.     Defendants violated the KCPA by intentionally violating Kentucky's rate limitations and attempting to circumvent state usury laws by fraudulently and deceptively hiding

behind tribal sovereign immunity. Defendants had an ongoing duty to Plaintiff and the Class to refrain from unfair and deceptive practices under the KCPA in the course of its business.

89.    Plaintiff and the Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair, fraudulent, and deceptive behavior.

90.    Defendants' unfair, fraudulent, and deceptive conduct was either knowing, willful, and intentional, or, alternatively, demonstrated a lack of care, recklessness, or conscious disregard for the rights of Plaintiff and the Class, and thus Plaintiff and the Class are entitled to punitive damages.

91.    Defendants are liable to Plaintiff and the class members for damages in amounts to be proven at trial, including attorney's fees, costs, and punitive damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other relief deemed just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Putative Class Members demand judgment in their favor against Defendants Robinson Economic Services, LLC d/b/a Clear Air Lending, Robinson Economic Development Corporation, CT2022 FIN 1 LLC, BorrowWorks Financial, Inc, and BorrowWorks Decision Science, Inc., and seek an order:

a) Certifying the proposed Class;

b) Appointing Plaintiff as Class Representative;

c) Appointing counsel for Plaintiff as Class Counsel;

d) Permanently enjoining Defendants from engaging in the unlawful practices;

e) Awarding Plaintiff compensatory, direct, consequential, statutory, and punitive damages, including prejudgment interest, in an amount to be determined at trial;

f) Requiring Defendants to pay Plaintiff's attorneys' fees, costs, and expenses; and

g) Granting such other and further relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.

Dated:  December 4, 2025

Respectfully submitted,

**/s/ Amanda M. Lockaby**
Matthew T. Lockaby
Amanda M. Lockaby
Abigail C. Wearden
Lockaby PLLC
476 East High Street, Suite 200
Lexington, Kentucky 40507
Tele:   859.263.7884
Fax:    859.406.3333
Email: mlockaby@lockabylaw.com
        alockaby@lockabylaw.com
        awearden@lockabylaw.com

**/s/ Matthew J. Langley**
Matthew J. Langley
(*pro hac vice forthcoming*)
Almeida Law Group LLC
849 W. Webster Avenue
Chicago, IL 60614
Tele:   773.554.9354
Email: matt@almeidalawgroup.com

*Counsel for Plaintiff and the Class*